## KENTUCKY FARM BUREAU MUT. INS. CO.

### v.

### HARDIN et al.

Court of Appeals of Kentucky.

Dec. 11, 1953.

Ogden, Galphin & Abell, Charles A. Robertson, Louisville, for appellant.

Robert M. Spragens, Lebanon, for appellees.

CULLEN, Commissioner.

Following the total destruction by fire of a tenant house owned by Mr. and Mrs. Marshall Hardin, they sued the Kentucky Farm Bureau Mutual Insurance Company to recover the sum of $1,000, representing the amount of fire insurance coverage on the building under a policy issued by the

company to the Hardins. By way of defense, the company alleged that the policy prohibited other fire insurance on the building, and that the Hardins violated the terms of the policy by carrying other insurance. In a reply, the Hardins admitted that the building was insured in another company in the amount of $1,600, but they alleged that the defendant company knew of the existence of the other insurance and waived the provision in its policy against other insurance, and was estopped to set up the defense.

By appropriate pleadings, the company raised the point that recovery could not be had on the policy in an action at law, on the basis of waiver or estoppel, but the only remedy was by suit in equity for reformation of the policy. The court ruled against the company on this point. The issue of whether the company knew of the other insurance, at the time its policy was written, then was submitted to a jury, and the jury found for the plaintiffs. The company has appealed from the judgment entered on the verdict.

The first contention of the company is that the only remedy of the Hardins was by way of a suit in equity for reformation of the policy. The company recognizes that this Court has permitted recovery, in cases similar to this, in an action at law based on waiver or estoppel. See Westchester Fire Ins. Co. of New York v. Wilson, 220 Ky. 142, 294 S.W. 1059; Connecticut Fire Ins. Co. v. Roberts, 226 Ky. 534, 11 S.W.2d 148; Employers Mutual Fire Ins. Co. v. Cunningham, Ky., 253 S.W.2d 393. However, the company maintains that there is a distinction between a case where the provision claimed to have been waived was a provision of the original policy, and a case such as this one where a limitation on the amount of other insurance was attached to the policy as a rider.

■ The facts in this case are that the original policy contained a flat prohibition against other insurance, and there was attached to the policy, as a rider, a "Total Insurance Permit" allowing other insurance on the various buildings covered by the policy, provided that the other insurance, when added to the amount written by the defendant company, could not exceed a specified total amount of insurance for each building. The amount specified for the tenant house was $1,000, which was the amount written by the defendant company. Therefore, as concerned the tenant house, the "Total Insurance Permit" did not in actuality permit any other insurance, and did not in any way affect the provision of the original policy absolutely prohibiting other insurance.

The company argues that since the "Total Insurance Permit," attached to the policy as a special part of the contract, specified exact amounts of insurance that would be permitted on each building, the Hardins could recover only by proving, in a suit in equity for reformation, that the amounts specified in the permit were not the amounts agreed upon, and the Hardins cannot assert that this special part of the contract, attached to the policy to meet a particular situation, was waived at the time it was written. The company maintains that the permit evidences a definite agreement between the parties concerning other insurance, as to which a waiver could not possibly exist.

■ If the "Total Insurance Permit" had allowed some amount of other insurance on the tenant house, in addition to that written by the defendant company, we perhaps would agree with the company that the insured could not, in an action at law upon the policy, assert a waiver or estoppel based upon the company's knowledge that the insured was carrying other insurance in excess of the specified amount. But here the permit is in substance nothing more than a flat prohibition against any other insurance on the tenant house, which prohibition was in the main policy to start with, and the company cannot with good grace argue, therefore, that the permit represents a special agreement concerning other insurance.

It is our opinion that the Hardins were entitled to base their right to recover on a theory of waiver or estoppel, under authority of the cases hereinbefore cited.

■ The company next contends that the Hardins' reply did not allege facts sufficient to constitute a waiver or estoppel. This is on the theory that the reply merely alleged that the company knew that the Hardins had another insurance *contract*, without alleging knowledge that the other contract covered the tenant house. This argument is without merit, because the reply alleged that the Hardins had insurance with another company, on the tenant house, in the amount of $1,600, and that the defendant company knew of the existence of "said contract." There is no suggestion that the defendant company was misled or did not know what the real issue was.

■ The final contention is that the evidence was not sufficient to establish a waiver or estoppel. It is claimed that the evidence did not prove actual knowledge by the defendant's agent of the other insurance on the tenant house, but at the most showed merely that the agent had notice of certain facts which, if diligently inquired into, would have led to knowledge of the other insurance.

The defendant's policy covered the main dwelling on the Hardins' farm, a smoke house, and the tenant house. The evidence is uncontradicted that the defendant's soliciting agent knew of the other insurance on the main dwelling. The application which the agent filled out stated that there was $4,000 of other insurance on the property being insured, without specifying on which of the buildings the other insurance was carried. Later, the agent wrote the company, in response to an inquiry, that the other insurance was on the main dwelling only.

The Hardins testified that, about two months before the policy was written, they told the agent, in a street-corner conversation, that all of their buildings were insured. Mrs. Hardin said that at the time the policy was written, the agent asked her about the amount of other insurance on the main dwelling, but did not inquire about the tenant house. Mr. Hardin stated that on the day the policy was written, he told the agent that "me and my wife had talked it over and we thought we didn't hardly have enough insurance on the buildings, the home and tenant house, and we decided to add a little more". He said he also asked the agent whether they could have fire insurance in more than one company.

It is clear from the evidence that the defendant's agent was urgently soliciting the Hardins, over a period of several months, to take out insurance with his company, and on at least two occasions they had told him they thought they had enough insurance. On the day the policy was written, the agent came to the Hardins' farm for the express purpose of trying to sell them some insurance. Beyond question, he knew they were the kind of people who carried insurance, and he was anxious to get their business. In fact, on the application for the policy here in question, he wrote a note to the company that they would get all of the insurance when the other policy expired.

We think the evidence was adequate to support a finding that the agent actually knew there was other insurance on the tenant house.

The judgment is affirmed.